No. 96-244

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

vs.

LYLE D. ROBISON,

Defendant and Appellant.


APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Carrie L. Garber, Deputy Public Defender, Billings,
Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Pamela P.
Collins, Assistant Attorney General; Dennis Paxinos,
Yellowstone County Attorney, Billings, Montana


Submitted on Briefs: January 2, 1997

Decided:  January 9, 1997
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Lyle D. Robison (Robison) appeals from a February 26, 1996, Yellowstone County jury verdict finding him guilty of driving under the influence of alcohol (DUI), a felony, in violation of  61-8-401, MCA.  We reverse and remand for a new trial.

The dispositive issue we address on appeal is whether the trial court properly instructed the jury as to the element of "actual physical control".  We hold that it did not.

Background

On November 24, 1995, Robison was charged in the Thirteenth Judicial District Court with felony DUI arising out of an incident occurring in the early morning hours of November 21, 1995.  Because we are remanding for a new trial, we will not address the facts in any detail, except to note that they were disputed and that, depending upon which witnesses the jury believed, it could have legitimately found Robison either guilty or not guilty.

Basically, it was the State's evidence that Robison was found in a Billings parking lot sitting in the driver's seat of an automobile with his body from the waist up slumped over into the passenger's seat and with his feet near the pedals.  The automobile appeared to be locked, the motor was running and the lights were on.  Robison was asleep or passed out and had to be aroused by the investigating officer.  There was little doubt, as Robison readily concedes, that he was heavily intoxicated--"pig drunk," in his words.

Robison's defense, however, was that he had become intoxicated in a local bar; that he had become acquainted with Jim Rutledge (Rutledge) who offered to and was in the process of driving Robison to his hotel; that Robison passed out in the car; and that he was awakened by the investigating officer.  Robison maintained he was occupying the passenger's seat with his legs sprawled on the driver's side.  Robison did not recall if the doors were locked but testified that the driver's door had a mechanical problem that, from the outside, made it difficult to open and caused it to appear that the door was locked.

Rutledge testified that he, too, was drunk, but he confirmed Robison's story, maintaining that he (Rutledge) was driving the automobile with Robison as the passenger.  Rutledge stated that he

had pulled into the parking lot to relieve himself. He saw the police car approaching, panicked, and ran off, leaving Robison asleep in the passenger's seat with the motor running, the lights on, the parking brake engaged and the driver's door unlocked.

Discussion

To convict Robison of DUI, the State must prove that he was (1) driving or in actual physical control of a vehicle; (2) upon the ways of this State open to the public; and(3) while under the influence of alcohol. Section 61-8-401, MCA. In this case, the only element in dispute is (1). Robison admits he was intoxicated in his automobile, but he denies that he was in actual physical control of his vehicle.

In State v. Ruona (1958), 133 Mont. 243, 321 P.2d 615, we explained that a person has actual physical control of a vehicle when:

[he] has existing or present bodily restraint, directing influence, domination or regulation, of an automobile. . . . .

Ruona, 321 P.2d at 618.

At Robison's trial the State offered a proposed instruction regarding the element of actual physical control as follows:

"Actual physical control" means that a person has existing or present bodily restraint, directing influence, dominion or regulation of an automobile. Movement of the vehicle is unnecessary.

The trial court, however, refused to give this proposed instruction and, instead, with no objection from the State, but over objection of Robison, instructed the jury as to the element of actual physical control as follows:

"Actual physical control" means that a person has existing or present bodily restraint, directing influence, dominion or regulation of a motor vehicle. Movement of the vehicle is unnecessary. One may be in actual physical control of a motor vehicle if he is physically inside an operational motor vehicle with the potential to operate or drive that motor vehicle while under the influence of alcohol on the ways of this State open to the public.

The court stated that, in its opinion, it was necessary to expand the definition of "actual physical control" in this case because Robison was found passed out in the front seat and that the definition was expanded "to include the potential of [Robison] awakening and driving while still intoxicated." Robison contends that this jury instruction--specifically, the last sentence of the instruction--broadened our long-standing

definition of "actual physical control" thereby rendering the judicially established meaning of "actual physical control" unconstitutionally vague and overbroad, both on its face and as applied in this case, and impermissibly shifted the burden of proof from the State to the defendant.

The State disagrees and contends that Robison's interpretation of "actual physical control" is too restrictive. Relying on various cases in which this Court has upheld DUI convictions where the defendant was asleep or passed out behind the wheel, slumped onto the middle of the seat, alone in the vehicle and lying across the front seat or otherwise in a position to regulate the movements of the vehicle, the State maintains that the trial court's instruction does not expand our definition of "actual physical control", but is consistent with our prior decisions. We disagree.

Factually, this case is not unlike many of the scenarios described in the cases relied upon by the State. Indeed, had the court properly instructed the jury, Robison could properly have been found guilty of DUI--he was alone, asleep or passed out, in the front seat of an automobile, with the motor running and the lights on in a parking lot; he was clearly intoxicated. With a proper instruction on "actual physical control", the jury could have convicted Robison of DUI on this record, believing that he had been driving or that he had dominion, directing influence or regulation of the vehicle. Rather, it is the additional language which the court added to the instruction on "actual physical control"--language not at issue in our prior decisions--that concerns us here.

We review jury instructions in a criminal case to determine whether the instructions, as a whole, fully and fairly instruct the fact finder on the law applicable to the case. State v. Leyba (1996), 276 Mont. 45, 51, 915 P.2d 794, 797. Moreover, district courts have broad discretion in formulating jury instructions. State v. Ross (1995), 269 Mont. 347, 358, 889 P.2d 161, 167.

In this regard, we note in passing that the language from Ruona referred to above, while not objected to by either the defense or the State, is perhaps not the most clear and understandable definition of "actual physical control." Given the increasing numbers of DUI trials and felony DUI charges occasioned by 1995 legislative changes in the DUI laws, and in the absence of any statutory definition of "actual physical control," it may be appropriate that the Criminal Jury Instruction Commission consider adopting a clearer and more understandable definition of this phrase as part of the model Montana Criminal Jury Instructions. That notwithstanding, we conclude that the trial court misstated the law and abused its discretion in instructing the jury on the element of "actual physical control" in the manner stated above.

As noted previously, the definition of "actual physical control" has been fleshed out by judicial interpretation and we

have upheld DUI convictions in a variety of factual scenarios which did not involve the accused being arrested while actually driving a vehicle. See, for example, Ruona, 321 P.2d 615; State v. Taylor (1983), 203 Mont. 284, 661 P.2d 33; State v. Ryan (1987), 229 Mont. 7, 744 P.2d 1242; Turner v. State (1990), 244 Mont. 151, 795 P.2d 982; Gebhardt v. State (1989), 238 Mont. 90, 775 P.2d 1261; State v. Peterson (1989), 236 Mont. 247, 769 P.2d 1221.

Had the court instructed on the element of "actual physical control" in the language offered by the State, the jury may well have found Robison guilty on the factual record. To do so, however, it would have had to disbelieve Robison's and Rutledge's testimony that Rutledge, not Robison, was at all times the driver of the automobile. That, of course, would have been the jury's prerogative.

It does not take much in the way of legal analysis, however, to see that, under the jury instruction given by the court, even if the jury believed that Rutledge and Robison had testified truthfully, the jury still could have found Robison in actual physical control of the vehicle and, therefore, guilty of DUI under the facts here. The mischief in the court's instruction is the following language which it added to the instruction proposed by the State:

One may be in actual physical control of a motor vehicle if he is physically inside an operational motor vehicle with the potential to operate or drive that motor vehicle while under the influence of alcohol on the ways of this State open to the public.

Under this statement of the law, even if Robison was, in truth, simply an intoxicated passenger in the vehicle and had never driven it while intoxicated, he was, nevertheless, "physically inside an operational motor vehicle with the potential to operate or drive that motor vehicle while under the influence of alcohol on the ways of this State open to the public," and, therefore, in "actual physical control" under the court's instruction. Obviously, the offense of DUI is directed at the driver of the vehicle, not at other persons who, while intoxicated, might legitimately happen to be passengers in the vehicle. For example, assume that Mary, Joe, Betty and Bill are out on the town. Mary is the designated driver and has not consumed any intoxicant. Joe, Betty and Bill, however, are all intoxicated. On the way home Mary is driving, Joe is in the front passenger seat and Betty and Bill are in the rear seat. Mary stops at a gas station to use the restroom, leaving Joe, Betty and Bill sitting in the car with the windows down, the motor running and the lights on, singing "99 bottles of beer on the wall", with enough gusto that leaves no doubt as to their lack of sobriety. At this point, Officer Smith arrives on the scene and properly concludes that all three are

intoxicated.   Under the court's instruction, Joe, Betty and Bill are each "physically inside an operational motor vehicle with the potential to operate or drive that motor vehicle while under the influence of alcohol on the ways of this State open to the public," and are, therefore, in "actual physical control" of the vehicle for purposes of DUI.   Each could be charged with and convicted of DUI without any evidence, direct or circumstantial, that any one of them had ever actually operated the vehicle while intoxicated.   In short, DUI would encompass not only an intoxicated driver but all intoxicated passengers as well.   Simply put, an intoxicated person could never risk setting foot in a vehicle even for the legitimate purpose of simply being a passenger.

Under the circumstances, we agree that the court's instruction impermissibly broadened the judicial definition of "actual physical control" to include, as a practical matter, every intoxicated occupant of a vehicle whether or not he or she was or ever had been operating the vehicle. We hold that, in so doing, the court misstated the law defining "actual physical control" and that it abused its discretion in instructing the jury in the manner that it did.

Reversed and remanded for new trial.

/S/   JAMES C. NELSON

We Concur:

/S/   J. A.   TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   KARLA M. GRAY
/S/   W. WILLIAM LEAPHART